UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GLENN FRED GLATZ,                          )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )        No. 3:21-CV-00026-DCLC-DCP
                                           )
DAVID B. RAUSCH et al.,                    )
                                           )
        Defendants.                        )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the State Defendants' Motion to Dismiss [Doc. 137],

State Defendants' Memorandum of Law in Support [Doc. 138], Defendant Jefferson County's

Motion to Dismiss [Doc. 133], Defendant Jefferson County's Memorandum of Law in Support

[Doc. 134], Defendant Sevier County's Motion to Dismiss [Doc. 135], and Sevier County's

Memorandum in Support [Doc. 136]. Plaintiff Glenn Fredd Glatz, who is acting pro se, has not

responded to Defendants' motions to dismiss. For the reasons herein, the Court will grant their

motions.

## I.  BACKGROUND

Mr. Glatz alleges that between 1992 and 1993 he was convicted in Georgia of a sexual

offense against a minor and received a twenty-year sentence.[1] [Fourth Am. Compl., Doc. 131,

at 1, 26]. He further alleges that in 2016 and 2017 prosecutors in Sevier County, Tennessee,

charged him with violating the Tennessee Sexual Offender and Violent Sexual Offender

Registration, Verification and Tracking Act of 2004 ("TSORA"), and he alleges that in 2018

---

[1] Mr. Glatz was also convicted in this Court for receiving, producing, and distributing child pornography and for transferring obscene material to a minor. [J., Doc. 382, at 1, No. 3:19-CR-00218-1-TAV-DCP].

prosecutors in Jefferson County, Tennessee, charged him with the same violation. [*Id.* at 5, 6, 9, 13–14, 32, 34]. He describes the charge in Jefferson County as "still pending," [*id.* at 5], and he alleges that he pleaded guilty to the charge in Sevier County, [*id.* at 13]. He is currently in Jefferson County's custody. [Pl.'s Notice of Change of Address, Doc. 122, at 1].

In addition, this Court's records[2] show that in 2023 a federal petit jury convicted him on charges of receiving, producing, and distributing child pornography and for transferring obscene material to a minor. [Verdict Form, Doc. 294, at 1–5, No. 3:19-CR-00218-1-TAV-DCP; J., Doc. 382, at 1, No. 3:19-CR-00218-1-TAV-DCP].[3] The Court sentenced him to life imprisonment, to run concurrently to any anticipated sentence in Jefferson County, and ordered him to comply with the requirements of "any state sex offender registration agency in which [he] reside[s], work[s], [is] a student, or [was] convicted of a qualifying offense." [J., Doc. 382, at 2, 3, No. 3:19-CR-00218-1-TAV-DCP]. The Sixth Circuit affirmed his sentence last month. [Sixth-Circuit Order, Doc. 396, at 1–13, No. 3:19-CR-00218-1-TAV-DCP]. But on March 9, 2026, Mr. Glatz, acting pro se, moved the Sixth Circuit for a rehearing, and the next day, the Sixth Circuit sua sponte recalled its mandate. [Sixth-Circuit Order, Doc. 399, at 1, No. 3:19-CR-00218-1-TAV-DCP]. The Sixth Circuit has not yet ruled on his motion for a rehearing.

Mr. Glatz now brings suit under 42 U.S.C. § 1983 against Tennessee Governor Bill Lee, TBI Director David B. Rausch, and Tennessee Attorney General Johathan Skrmetti—in their official capacities—and Jefferson and Sevier Counties ("Defendants"). His criminal history is an important backdrop for his suit, and the object of his suit is TSORA. By way of background,

---

[2] The Court may take judicial notice of court records. *Lyons v. Stovall*, 188 F.3d 332 n.3 (6th Cir. 1999). In addition, the Court may consider court records without converting a motion to dismiss into a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

[3] Mr. Glatz makes reference to this conviction in his complaint. [Fourth Am. Compl. at 46–47, 51].

2

TSORA requires anyone convicted of a sexual offense or violent sexual offense, whether in Tennessee or another jurisdiction, to register as a sex offender in Tennessee. Tenn. Code. Ann. § 40-39-202. TSORA does three things: (1) it requires sex offenders to appear quarterly at a local law-enforcement agency and report their personal information, including their address, vehicle, social security number, and details about their lives; (2) it publishes information about them, including their identity, criminal history, physical features, address, driver's license number, vehicle license plates, and employer; and (3) it restricts their geographical movement—where they can live, work, and stay. *Doe v. Lee*, 102 F.4th 330, 334 (6th Cir. 2024). Tennessee views TSORA and its requirements as "instrumental in combating recidivism among a class of defendants it views as particularly dangerous to the most vulnerable within its society—its children." *Id.* at 332.

Mr. Glatz, however, complains that TSORA violates the United States Constitution. Specifically, he claims that it violates the Ex Post Facto Clause[4] and the First, Fourth, Eighth, and Fourteenth Amendments, and he claims it is unconstitutionally vague. [*Id.* at 26–31, 35, 36–37]. He seeks to hold Governor Lee, Director Rausch, and Attorney General Skrmetti liable in their official capacities for retroactively enforcing TSORA. [*Id.* at 35–37]. As for Jefferson and Sevier Counties, he alleges that they maintain illegal policies and customs of retroactively enforcing TSORA and have conspired with each other to enforce those policies and customs. [*Id.* at 4–6, 9, 38–39]. In addition to his claims under § 1983, he brings tort claims for false imprisonment and intentional infliction of emotional distress. [*Id.* at 34]. He requests monetary

---

[4] "The Ex Post Facto Clause prohibits passing a law that retroactively increases the punishment for a crime after its commission or retroactively imposes punishment for an act that was not punishable when committed." *Mangum v. Lee*, No. 22-5660, 2023 WL 6130306, at *2 (6th Cir. July 10, 2023) (citing *United States v. Coleman*, 675 F.3d 615, 619 (6th Cir. 2012)).

3

damages, declaratory judgments—i.e., declarations that TSORA is unconstitutional and not retroactively enforceable—injunctive relief, and other remedies. [*Id.* at 47–51].

Defendants now move for the dismissal of Mr. Glatz's claims on multiple grounds. Mr. Glatz has not responded to their motions. Having carefully considered Defendants' motions and arguments, the Court will now rule on them.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.* When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's allegations as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

## III. ANALYSIS

Section 1983 permits a claim for damages against "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," a defendant can be liable "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: the defendant (1) must deprive the plaintiff of a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of state law (i.e., state action). *Id.* at 511. "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

A violation of a constitutional or federal statutory right is a prerequisite to a claim under § 1983 because § 1983 "does not confer substantive rights" on a plaintiff; rather, it is merely a conduit through which a plaintiff may sue another to "vindicate rights conferred by the Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010); *see Graham v. Conner*, 490 U.S. 386, 393–94 (1989) ("[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." (quotation omitted)). "The first inquiry in any § 1983 suit" is therefore "to isolate the precise constitutional violation with which [the defendant] is charged[.]" *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see Graham*, 490 U.S. at 394 ("[A]nalysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." (citation and footnote omitted)).

### A. Statute of Limitations

The Court begins with Mr. Glatz's claims against Jefferson County and Sevier County, both of which argue, effectively, that Mr. Glatz's claims against them warrant dismissal under

5

the applicable statute of limitations. [Jefferson Cnty.'s Mem. at 6–7; Sevier Cnty.'s Mem. at 3]. Tennessee's one-year statute of limitations for personal injury applies to Mr. Glatz's claims under § 1983. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Even though "state law sets the length of the statute of limitations, 'federal law' establishes when the 'statute of limitations begins to run,'" *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (quotation omitted)), and under federal law, it runs when a plaintiff discovers, or should have discovered through exercising reasonable diligence, his injuries, *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Common senses dictates when a plaintiff should have discovered the need to protect his legal rights in response to his injuries. *Roberson*, 399 F.3d at 794.

Mr. Glatz's claims against Jefferson and Sevier Counties are municipal liability claims, which requires each to have a policy or custom that operated as the "moving force" behind the deprivation of Mr. Glatz's constitutional rights. *Miller v. Sanilac County*, 606 F.3d 240, 254–55 (6th Cir. 2010) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Mr. Glatz alleges that Jefferson County's and Sevier County's policies of retroactively enforcing TSORA are the moving force behind his constitutional injuries. [Fourth Am. Compl. at 35–37]. Common sense dictates that he would have become aware of those policies, and the need to vindicate his legal rights, when they enforced those policies against him by charging him with retroactive violations of TSORA and arresting him in 2016, 2017, and 2018. *Cf. McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (stating that, when a plaintiff claims he was wrongfully arrested, the statute of limitations runs on the date of the arrest). After all, Mr. Glatz alleges that he was wrongfully arrested and falsely imprisoned as a result of Jefferson County's and Sevier County's enforcement of their policies. [Fourth Am. Compl. at 6, 9, 34]. Under the one-year statute of limitations, Mr. Glatz was therefore required to bring his claims in

6

this Court no later than 2017 (for the 2016 arrest), 2018 (for the 2017 arrest), and 2019 (for the 2018 arrest), but he did not bring them until 2021, and the statute of limitations therefore bars them.

Mr. Glatz, however, claims that he was unable to discover his injuries until January 2020 at the earliest because he did not have access to a law library until that date. [*Id.* at 10]. The doctrine of equitable tolling allows courts to toll, or stop the running of, a statute of limitations when a litigant's failure to meet it "unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). "The federal courts," however, only "sparingly bestow equitable tolling," *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citations omitted), and it is typically unavailable in civil cases under Tennessee law, *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012), whose rules on equitable tolling apply to Mr. Glatz's § 1983 claims unless they are "inconsistent with federal law or policy," *Roberson v. Macnicol*, 698 F. App'x 248, 20 (6th Cir. 2017) (quoting *Johnson v. Memphis Light, Gas, & Water Div.*, 777 F.3d 838, 842 (6th Cir. 2015)).

Even if Mr. Glatz is entitled to application of federal principles of equitable tolling, *see Doe v. Lee*, 752 F. Supp. 3d 884, 905 (M.D. Tenn. 2024) ("A refusal to recognize conventional principles of equitable tolling would run directly counter to the purposes of § 1983. This court, accordingly, will apply federal principles of equitable tolling in this case." (citation omitted)), his arguments do not warrant equitable tolling. An inmate's limited access to a law library, by itself, does not justify equitable tolling because ignorance of the law or the need for more time to become acquainted with the law does not permit the Court to suspend a statute of limitations on equitable grounds. *See Ross v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) ("It is well-settled

7

that ignorance of the law alone is not sufficient to warrant equitable tolling." (citations omitted));
*see also Graham-Humphreys*, 209 F.3d at 561 ("[E]ven a *pro se* litigant, whether a plaintiff or a defendant, is required to follow the law. In particular, a willfully unrepresented *plaintiff* volitionally assumes the risks and accepts the hazards which accompany self-representation." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))).

In addition, although Mr. Glatz asserts that Jefferson County and Sevier County are violating his constitutional rights "every single day" by participating in a conspiracy against him and are "creat[ing] a perpetual timeline in which the one-year personal injury timeframe limitation would be timely filed," [Fourth Am. Compl. at 3], the Court rejects this assertion on two grounds. First, his allegations of a conspiracy are conclusory, for the reasons that Jefferson County and Sevier County argue, even when the Court views them with deference to his pro-se status. A civil conspiracy requires "an agreement between two or more persons to injure another by unlawful action," *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quotation omitted), and Mr. Glatz must allege "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive [him] of [his] constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury," *id.* (quotation omitted). He fails to allege sufficient facts supporting these three elements. He claims only that Jefferson County's and Sevier County's "unconstitutional customs and policies" are the object of the conspiracy, [Fourth Am. Compl. at 9; *see id.* at 6–7, 8], and he does not sufficiently link their customs and policies to a common objective to deprive him of his constitutional rights. *See Robertson*, 753 F.3d at 622 ("[I]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983[.]" (quotation omitted)).

8

Second, even if Mr. Glatz had alleged sufficient facts to support an ongoing conspiracy against him, those facts would not change the Court's analysis under the statute of limitations. Mr. Glatz alleges that the conspiracy's overt acts are Jefferson County's and Sevier County's decisions to charge and arrest him for TSORA violations. [Fourth Am. Compl. at 5–6, 9]. Again, common sense dictates that he became aware of those actions when they occurred in 2016, 2017, and 2018, not later in the course of the alleged conspiracy.

And although he alleges that Jefferson County and Sevier County have charged "other similarly situated persons" with retroactive violations of TSORA, possibly on later dates, Mr. Glatz, as a pro se litigant, cannot bring claims on behalf of others or rely on those claims to perpetuate the statute of limitations. *See Ziegler v. Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) (declaring that "non-attorneys proceeding pro se cannot adequately represent a class" (citation omitted); *see also Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others." (citing 28 U.S.C. § 1654)); *Cohen v. Att'y Gen. of Mass.*, No. CA 11-115-NMG, 2011 WL 5008088, at *7 (D. Mass Oct. 18, 2011) ("Although 28 U.S.C. § 1654 permits persons to proceed *pro se*, this provision does not allow unlicenced [sic] lay people to represent other *pro se* litigants." (citation omitted)); *Powers v. NWA, Inc.*, No. 05-2468-B/P, 2006 WL 984738, at *2 (W.D. Tenn. Apr. 13, 2006) ("[P]laintiff cannot appear *pro se* on behalf of anyone other than herself."). For all these reasons, the statute of limitations bars Mr. Glatz's municipal liability claims against Jefferson County and Sevier County, and those claims are hereby **DISMISSED**.

9

### B. Sovereign Immunity

Mr. Glatz's remaining claims are against Governor Lee, Director Rausch, and Attorney General Skrmetti. "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office,' i.e., against the State," *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)), and Mr. Glatz's official-capacity claims against Governor Lee, Director Rausch, and Attorney General Skrmetti are therefore claims against the State of Tennessee. In moving for the dismissal of those claims, the State maintains, in part, that it is entitled to sovereign immunity. [State of Tenn.'s Mem. at 13–18].

States are entitled to sovereign immunity in federal suits, *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017), and "Tennessee has not waived its sovereign immunity and § 1983 does not override sovereign immunity," *Holmes v. Tennessee*, No. 14-5327, 2015 WL 13927114, at *1 (6th Cir. June 1, 2015) (citing Tenn. Code. Ann. § 20-13-102(a)). "This immunity bars suits 'for injunctive, declaratory or monetary relief,'" the very forms of relief that Mr. Glatz seeks from the Court. *Morgan v. Bd. of Pro. Resp. of the Supreme Court of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (quotation omitted).

Three exceptions exist to a state's sovereign immunity: (1) when the state has consented to a suit, (2) when the *Ex Parte Young* exception applies to a case, and (3) when Congress has abrogated the state's immunity. *S & M Brands*, 527 F.3d at 507. Tennessee has not consented to Mr. Glatz's suit—indeed, it raises sovereign immunity and other defenses to his suit—and Congress has not abrogated Tennessee's immunity, *id.*, so the second exception, the *Ex parte Young* exception, is the only exception that applies. Under *Young*, "a suit challenging the constitutionality of a state official's action is not one against the state," *Pennhurst State Sch. &*

*Hosp. Halderman*, 465 U.S. 89, 102 (1984), and *Young* authorizes courts to enjoin a state official from enforcing an unconstitutional statute and to declare it unconstitutional, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n. 10 (1989).

But courts' authority under *Young* is far from limitless. Indeed, "[c]ourts have not read *Young* expansively," *Child.'s Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (citing *Pennhurst*, 465 U.S. at 102)), and "*Young* does not reach state officials who lack a 'special relations to the particular statute' and '[are] not expressly directed to see to its enforcement," *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (alterations in original) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). The burden is on a plaintiff to "allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (citation omitted).

Although Mr. Glatz alleges that Governor Lee and Attorney General Skrmetti each has a hand in retroactively enforcing TSORA, [Fourth Am. Compl. at 36–37], his allegations are legally untenable, for the reasons that the State of Tennessee argues in its motion to dismiss. According to Mr. Glatz, Governor Lee "bears ultimate constitutional responsibility" for the enforcement of TSORA, [*id.* at 36], but in actuality, Governor Lee possesses general executive power to "take care that the laws [of Tennessee] be faithfully executed," Tenn. Const. art. III, § 10, and this power "does not give him a role in the enforcement of individual criminal laws beyond his general 'take care' duty," *Lee*, 102 F.4th at 336; *see Child.'s Healthcare*, 92 F.3d at 1416 ("Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court intended." (citations omitted)). Governor Lee is therefore entitled to sovereign immunity against

11

Mr. Glatz's claims, and Mr. Glatz's claims against Governor Lee in his official capacity are **DISMISSED**.

Mr. Glatz's allegations against Attorney General Skrmetti fare no better in forging the requisite relation between him and TSORA's enforcement. He alleges that Attorney General Skrmetti is an "appropriately named defendant" because "it is within [his] duties to coordinate and guide the several district's attorneys in what constitutes legal application of the state's laws," but this allegation is insufficient to show that Attorney General Skrmetti is "expressly directed to see to [TSORA's] enforcement." *Russell*, 784 F.3d at 1047 (quoting *Young*, 209 U.S. at 157). "One might think that" Tennessee's Attorney General, "as the state's chief law-enforcement officer," brings criminal actions against those who violate Tennessee's criminal statutes, but "the Tennessee Attorney General does not have the power to initiate criminal prosecutions." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032 (6th Cir. 2022) (citing Tenn. Code Ann. § 8-6-109). "Tennessee's Attorney General is limited to handling appeals, reporting court decisions, offering advisory opinions, suing to recover public funds, and defending the constitutionality of state statutes." *Id.* (citing Tenn. Code Ann. § 8-6-109). The mere fact that Attorney General Skrmetti possesses these powers—which is effectively all that Mr. Glatz alleges—does not plausibly show that Attorney General Skrmetti sees to TSORA's enforcement. An attorney general, for example, will be responsible for the enforcement of a sex-offender statute, and subject to suit under *Young*, if he "promulgate[s] regulations implementing the sex-offender registration requirements; operate[s] the state-wide sex-offender database; and send[s] and structure[s] community notifications that alert citizens to the proximity of registered offenders." *Doe v. DeWine*, 910 F.3d 842, 849 (6th Cir. 2018). Mr. Glatz does not allege that Attorney General Skrmetti does any of those things. Attorney

12

General Skrmetti is therefore entitled to sovereign immunity, and Mr. Glatz's claims against Attorney General Skrmetti in his official capacity are **DISMISSED**.

Mr. Glatz's allegations against Director Rausch, however, make for a closer call, as far as sovereign immunity goes. Mr. Glatz alleges that Director Rausch creates, maintains, and administers TSORA's registry; notifies local prosecutors and other officials when a registrant is non-compliant; makes registry information available to state agencies, social-service groups, volunteer organizations, background-check entities, and requesters, and publishes the registry online. [Fourth Am. Compl. at 35]. One district court in this circuit has determined that these types of facts suffice to create a "clear connection" between Director Rausch and TSORA's enforcement. *Doe #1–9 v. Lee*, 809 F. Supp. 3d 768, 783 (M.D. Tenn. 2025). But even if he is not entitled to sovereign immunity, Mr. Glatz's claims against the State would still require dismissal because, as the State correctly argues, those claims are not ripe for judicial review.

### C. Ripeness

The State argues that Mr. Glatz's "claims depend on reversal of his life sentence" and that these claims are therefore not ripe because "[s]uch reversal is the epitome of a contingent future event that 'may not occur.'" [State of Tenn.'s Mem. at 10–11 (quoting *Carman v. Yellen*, 112 F.4th 386, 400 (6th Cir. 2024)]. The Cout agrees.

The federal courts' judicial power to address disputes between parties does not extend "to any legal question, wherever and however presented, but only to those legal questions presented in 'Cases' and 'Controversies.'" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (quoting U.S. Const. art. III, § 2). In this vein, a claim is not subject to the Court's jurisdiction unless it is ripe. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Ripeness is a question of whether a plaintiff "'is threatened with imminent injury in fact,'"

*Carman v. Yellen*, 112 F.4th 386, 400 (6th Cir. 2024) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)), and to answer this question, the Court assesses (1) whether the claim "arises in a concrete factual context and concerns a dispute that is likely to come to pass" and (2) whether the parties will suffer hardship from the Court's non-adjudication of the claims, *Warshak*, 532 F.3d at 525 (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "[A] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985))).

Because the Court has now dismissed Mr. Glatz's claims against Jefferson County and Sevier County, Mr. Glatz's only remaining exposure to TSORA, at least as far as his complaint is concerned, is through this Court's criminal judgment, and his § 1983 claim as it relates to his exposure in that judgment is not ripe. The Sixth Circuit has acknowledged that Michigan's version of SORA does not "encompass custodial requirements," *Corridore v. Washington*, 71 F.4th 491, 501 (6th Cir. 2023), and that same acknowledgment would likely apply to TSORA because the Sixth Circuit has said that TSORA's classification provisions and geographical provisions are effectively the same as those in Michigan's statute, *Doe*, 102 F.4th at 339; *see* Tenn. Code Ann. 40-39-203(a)(1) (providing that an offender shall register or report in person *after* release from incarceration). Mr. Glatz's life sentence—unless he succeeds in achieving its reversal—means that he will remain in custody for the rest of his natural-born life, so this Court's requirement that he must comply with TSORA's provisions, while mandatory, may never take effect against him. Indeed, the Court ordered him to comply with TSORA "[u]pon his release from imprisonment." [J. at 3].

14

The Court therefore cannot conclude that enforcement of TSORA's provisions against him, vis-à-vis the Court's criminal judgment, is likely to come to pass at this time. *See United States v. Bennett*, 823 F.3d 1316, 1327 (10th Cir. 2016) (finding that a special condition of supervised release that would not be imposed for another ten years was "not yet sufficiently concrete"); *United States v. DeLeon*, 444 F.3d 41, 55–56 (1st Cir. 2006) ("The argument is that Mr. Garcia, who is in immigration custody and facing imminent deportation from the United States, will never be subject to the supervised release portion of his sentence. . . . [W]e hold that . . . [the] issue in this case is moot."); *see also Doe v. Univ. of Mich.*, 78 F.4th 929, 950 (6th Cir. 2023) ("Neither the parties nor the district court had any idea whether or when a sanction would be ordered and thus the issue" was not ripe. (internal quotation mark omitted) (quoting *Texas*, 523 U.S. at 300)). Nor can the Court conclude that Mr. Glatz will suffer any appreciable hardship from the Court's non-adjudication of his claim. "The prototypical case of hardship comes from the claimant who faces a choice between immediate complying with a burdensome law or risking serious criminal and civil penalties." *Warshak*, 532 F.3d at 531 (alterations and internal quotation marks omitted) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967))). Mr. Glatz, for the reasons the Court has already mentioned, faces no such choice at this time. His only remaining § 1983 claim against Director Rausch in his official capacity is therefore not ripe, and it is hereby **DISMISSED WITHOUT PREJUDICE**.

### D. Tort Claims

Finally, as to Mr. Glatz's lone-standing tort claims, the Court will decline to exercise supplemental jurisdiction over them, having now dismissed all of his federal claims. 28 U.S.C. 1367(c), by its plain language, creates "a doctrine of discretion," under which supplemental jurisdiction "need not be exercised in every case in which it is found to exist." *United Mine*

15

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Under § 1367(c), the Court's discretion arguably crests when it has dismissed all the federal claims in a case, as it has done here. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) (stating that the dismissal of the lone federal claim provided the district court with "a powerful reason to choose not to continue to exercise jurisdiction"); *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("[A] district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." (quotation omitted)).

The Court sees no reason to depart from the general rule favoring the dismissal of state claims upon dismissal of federal claims. Although this case has been on the Court's docket for some time, it has not advanced far beyond the pleading stage, partly because Mr. Glatz has filed four sprawling complaints, which have required multiple rounds of legal briefing. In addition, discovery is not yet closed. *See* [Scheduling Order, Doc. 128, at 1]. The Court may therefore properly exercise its discretion not to accept supplemental jurisdiction over Mr. Glatz's tort claims, and those claims are hereby **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the reasons that the Court has stated in this Memorandum Opinion and Order, Defendant State of Tennessee's, Defendant Jefferson County's, and Defendant Sevier County's motions to dismiss [Docs. 133, 135, & 137] are **GRANTED**. The Court will enter a judgment order consistent with this opinion.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

16